UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Civil Action No.:**

TRIVEST PARTNERS CORPORATION,

           Plaintiff,

v.

TRIVEST FINANCE LLC,

           Defendant.

_____/

## **COMPLAINT**

Plaintiff, TRIVEST PARTNERS CORPORATION ("Plaintiff" or "Trivest"), by and through undersigned counsel, sues Defendant, TRIVEST FINANCE LLC ("Defendant" or "Trivest Finance"), and alleges:

### **THE PARTIES**

1. Plaintiff, Trivest Partners Corporation, is a Delaware corporation with its principal place of business in Miami-Dade County, Florida.

2. Defendant, Trivest Finance LLC, is, upon information and belief, a Delaware limited liability company with its principal place of business in New York.

### **Jurisdiction and Venue**

3. This is an action for, among other things, trademark infringement under 15 U.S.C. § 1051, *et seq.*, cybersquatting under 15 U.S.C. 1125(d), and for other related claims and causes of action.

1

4. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

5. This Court has personal jurisdiction over Defendant because it promotes, markets, offers and provides infringing services in connection with infringing marks at issue in this litigation within the State of Florida.  As noted on Defendant's website, "Trivest Finance makes real estate investing easier, smoother and more successful for investors *all over the country*." *See* https://trivestfinance.com/about/ (emphasis added). Moreover, Defendant's website provides an option to apply for investment funding online, and the application process provides Florida as a location where funding is available. Applicants in Florida are able to apply for funding and purchase Defendant's services from Florida directly on Defendant's website.  A screenshot from Defendant's website of a sample application for funding in Coral Gables, Florida is attached hereto as **Exhibit "A."**

6. Based on the foregoing, personal jurisdiction over Defendant in Florida is proper because Defendant operates, conducts, engages in and carries on a business in Florida, including within this judicial district, committed a tortious act within Florida, including within this judicial district where Plaintiff Trivest resides, and has engaged in substantial and not isolated activity in this state. Thus, this Court's exercise of personal jurisdiction over Defendant is consistent both with Florida's long-arm statute, § 48.193(1)(a)(1) and (2) and § 48.193(2), and with due process.

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to at least 28 U.S.C. §§ 1391.

**General Allegations**

A.     **The TRIVEST Marks.**

8.     Trivest provides investment services for its clients, which involve management, structuring and completing private equity transactions on behalf of its clients, investment analysis, strategy, and acquisition and development of companies. Trivest markets, promotes, offers and provides its investment services exclusively under the name and in connection with the mark TRIVEST (the "TRIVEST Mark") and has been doing so for the past 40 years.

9.     Specifically, Trivest has been using the TRIVEST Mark in interstate commerce throughout the United States for investment-related services continuously since at least as early as 1984. As a result, Trivest has acquired substantial common law rights and other legal rights in and to the TRIVEST Mark.

10.    Additionally, Trivest owns and holds a collection of U.S. Trademark Registrations featuring its TRIVEST Mark, including U.S. Trademark Registration No. 1,568,809 (the "'809 Registration"), registered on November 28, 1989, for TRIVEST for "Investment banking services" in International Class ("IC") 036. Having been registered for so many years, the '809 Registration has long become incontestable, meaning that except for very limited circumstances, its validity cannot be challenged. A true and correct copy of the Certificate of '809 Registration is attached hereto as **Exhibit "B."**

11.    Trivest also owns and holds U.S. Trademark Registration No. 3,672,270 (the "'270 Registration"), registered on August 25, 2009, for TRIVEST for business management services in IC 035 and for an array of investment services in IC 036. The '270 Registration is also incontestable. A true and correct copy of the Certificate of '270 Registration is attached hereto as **Exhibit "C."**

12. Trivest also owns and holds U.S. Trademark Registration No. 6,449,724 (the "'724 Registration"), registered on August 10, 2021, for TRIVEST and Design, which appears as follows:

**TRIVEST**

("TRIVEST Design Mark") (the TRIVEST Mark and TRIVEST Design Mark are collectively referred to as the "TRIVEST Marks"). As can be seen from the image, the Trivest Design Mark includes the word "Trivest" with the right side of the "V" deliberately and distinctively emphasized in a different font from the rest of the letters. The '724 Registration identifies an array of services offered generally in the field of business management and investment in IC 035 and IC 036. A true and correct copy of the Certificate of '724 Registration is attached hereto as **Exhibit "D."**

13. Since at least as early as 1984, Trivest has extensively marketed its investment-related services using the TRIVEST Marks. As a result, the TRIVEST Marks have acquired invaluable goodwill throughout Florida and the United States.

14. Additionally, since it started using TRIVEST in or around 1984, Trivest has extensively advertised, marketed, and promoted its brand in connection with the investment services it provides, all of which signify that investors and clients know and recognize the TRIVEST Marks, and associate them exclusively and distinctly with Trivest and its high quality investment services. In other words, the TRIVEST Marks have acquired secondary meaning such that consumers associate the Marks exclusively with Trivest and no one else.

B.       **Defendant's Infringement of the TRIVEST Marks.**

15.    Trivest recently learned that Defendant is using a designation, "Trivest Finance," for a myriad of investment services that infringes on its TRIVEST Marks (the "Infringing Designation"). As apparent from its website, Defendant's services offered and provided under the Infringing Designation include real estate investment, hard money financing, bridge and rehab loans, rental loans, multi-family loans, construction loans, advising for financing solutions, and guidance and support for investment decisions both pre- and post-acquisition. *See* Defendant's "Products" webpage, a screenshot of which is attached hereto as "**Exhibit "E**." An example of the Defendants' Infringing Designation from its homepage is as follows:



16.    Perhaps even more troubling, and reflective of Defendant's deliberate intention to emulate Trivest, is the appearance of its logo, which, like the TRIVEST Design Mark, emphasizes with different font the letter "V" in Trivest:



(the "Infringing Design Designation") (the Infringing Designation and Infringing Design Designation collectively referred to as the "Infringing Designations").

17. Use of the Infringing Designations, which mimic the TRIVEST Marks in all material respects, evidences Defendant's improper purpose of trading off of the goodwill that Trivest has built in its TRIVEST Marks over the past 40 years.

18. It appears from Defendant's website that it first used the Infringing Designations in either 2022 or 2023, which is many, many years after Trivest first used its Marks and long after those Marks acquired secondary meaning and distinctiveness.

19. Defendant is competing with Trivest by marketing, selling, and providing services that are the same or substantially similar and/or highly and confusingly related to Trivest's services, namely, investment-related services.

20. Defendant's use of the Infringing Designations in connection with its services has caused or is likely to cause confusion, mistake, or deception among clients and consumers as to the source, origin, or sponsorship of such services. The consuming public is also likely to believe that Defendant's use of the Infringing Designations is authorized by Trivest when that is not the case. Moreover, Defendant's unauthorized use of the Infringing Designations has also injured or is also likely to injure the reputation and goodwill associated with Trivest and its TRIVEST Marks.

21. In view of its intentional appropriation of Trivest's distinctive Marks, and especially its Design Mark, it is impossible to believe that Defendant was not at all times aware of Trivest and its well-known Marks, including at the time Defendant adopted the Infringing Designations.

22. In addition to blatant use and infringement of the TRIVEST Marks, Defendant is advertising, marketing and promoting its services using an infringing domain name, http://trivestfinance.com (the "Infringing Domain"), which is likely to further add to consumer confusion, mistake, or deception because it contains the Infringing Designation "Trivest."

23. All of the above-referenced misconduct demonstrates that Defendants have a bad faith intent to profit from the Infringing Domain and Infringing Designations and to divert consumers and clients from Trivest's website to Defendant's infringing website. Defendant's use of the Infringing Domain is willful and intentional and intended as an effort to trade off of Trivest's goodwill and reputation.

24. All conditions precedent to the filing of this action have been fulfilled or waived.

25. Trivest has retained the undersigned counsel to represent it in this action and is obligated to pay undersigned counsel's reasonable attorneys' fees, which fees, together with costs, Trivest is entitled to recover from Defendant pursuant to at least 15 U.S.C. § 1117.

**COUNT I**
**Trademark Infringement of TRIVEST Mark under 15 U.S.C. § 1114**

26. Trivest re-alleges and re-avers paragraphs 1-25 as though fully set forth herein.

27. This is an action for trademark infringement under 15 U.S.C. § 1114.

28. Trivest is the owner of the '809 Registration and '270 Registration for the TRIVEST Mark.

29. Defendant's unauthorized use of the Infringing Designations has caused and/or is likely to continue to cause, confusion, mistake or deception among consumers as to the source, origin, or sponsorship of such services or as to the affiliation, connection or association of Defendant with Trivest. The consuming public is likely to believe that Defendant's services are

authorized, licensed, or sponsored by Trivest for use with the TRIVEST Mark, when that is not the case.

30. Defendant's use of the Infringing Designations constitutes trademark infringement under 15 U.S.C. § 1114.

31. As a proximate result of Defendant's actions, Trivest has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and strength of its TRIVEST Mark. The injury to Trivest is ongoing, continuous and irreparable. A monetary award of damages alone cannot fully compensate Trivest for its damages caused by Defendant, and Trivest lacks an adequate remedy at law.

32. The foregoing acts have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

33. Trivest is entitled to temporary and permanent injunctions against Defendant, as well as all other remedies available under the Lanham Act including, but not limited to, compensatory damages, treble damages, disgorgement of Defendant's profits, and costs and attorneys' fees.

## COUNT II
## Trademark Infringement of TRIVEST Design Mark under 15 U.S.C. § 1114

34. Trivest re-alleges and re-avers paragraphs 1-25 as though fully set forth herein.

35. This is an action for trademark infringement under 15 U.S.C. § 1114.

36. Trivest is the owner of the '724 Registration for the TRIVEST Design Mark shown above.

37. Defendant's unauthorized use of the Infringing Designations has caused and/or is likely to continue to cause, confusion, mistake or deception among consumers as to the source, origin, or sponsorship of such services or as to the affiliation, connection or association of

Defendant with Trivest. The consuming public is likely to believe that Defendant's services are authorized, licensed, or sponsored by Trivest for use with the TRIVEST Design Mark, when that is not the case.

38. Defendant's use of the Infringing Designations constitutes trademark infringement under 15 U.S.C. § 1114.

39. As a proximate result of Defendant's actions, Trivest has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and strength of its TRIVEST Design Mark. The injury to Trivest is ongoing, continuous and irreparable. A monetary award of damages alone cannot fully compensate Trivest for its damages caused by Defendant, and Trivest lacks an adequate remedy at law.

40. The foregoing acts have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

41. Trivest is entitled to temporary and permanent injunctions against Defendant, as well as all other remedies available under the Lanham Act including, but not limited to, compensatory damages, treble damages, disgorgement of Defendant's profits, and costs and attorneys' fees.

## COUNT III
## False Designation of Origin and Common Law Trademark Infringement under 15 U.S.C. § 1125

42. Trivest re-alleges and re-avers paragraphs 1-25 as though fully set forth herein.

43. Trivest owns and holds common law rights in and to the TRIVEST Marks throughout the United States based on its continuous use of the TRIVEST Marks since 1984 in connection with investment-related services.

44. Defendant's use of the Infringing Designations has caused and/or is likely to continue to cause, confusion, mistake or deception among consumers as to the source, origin, or sponsorship of such services or as to the affiliation, connection or association of Defendant with Trivest. The consuming public is likely to believe that Defendant's services are authorized, licensed, or sponsored by Trivest when that is not the case.

45. Defendant's use of the Infringing Designations constitutes infringement of Trivest's valid and subsisting common law rights in the TRIVEST Marks, as well as a false designation of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

46. As a proximate result of Defendant's actions, Trivest has suffered and will continue to suffer damage to its business, goodwill, reputation, profits and strength of its TRIVEST Marks. The injury to Trivest is ongoing, continuous and irreparable. A monetary award of damages alone cannot fully compensate Trivest for its damages caused by Defendant, and Trivest lacks an adequate remedy at law.

47. The foregoing acts have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

48. Trivest is entitled to temporary and permanent injunctions against Defendant, as well as all other remedies available under the Lanham Act including, but not limited to, compensatory damages, treble damages, disgorgement of Defendant's profits, and costs and attorneys' fees.

## COUNT IV
## Cybersquatting – 15 U.S.C. § 1125(d)

49. Trivest re-alleges and re-avers paragraphs 1-25 as though fully set forth herein.

50. This is an action for violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

51. Trivest has used the TRIVEST Marks continuously throughout the United States since at least as early as 1984, which is many, many years prior to Defendant's first use of the Infringing Designations.

52. The TRIVEST Marks are well-known and well-recognized in the industry as a result of Trivest's long, extensive, continuous, and exclusive use of the TRIVEST Marks in connection with its investment-related services and as its trade name, such recognition occurring long before Defendant's adoption and use of the Infringing Designations.

53. Defendant has registered and is using the Infringing Domain (http://trivestfinance.com), which contains the TRIVEST Mark and, thus, is confusingly similar to the TRIVEST Mark. Defendant is using the Infringing Domain for its website to advertise, market and promote its investment-related services.

54. Defendant has a bad faith intent to profit from the TRIVEST Mark as evidenced by, among other things, Defendant's ongoing unlawful use of the Infringing Designations and Infringing Domain. That is also evidenced by Defendant copying the TRIVEST Design Mark.

55. Defendant is using the Infringing Domain to divert internet traffic, including Trivest's potential consumers and clients, to Defendant's infringing website for the purpose of commercial gain.

56. Defendant's use of the Infringing Domain is causing and will continue to cause damage to Trivest, including, but not limited to, irreparable harm.

57. Defendant's conduct described herein constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

58. Trivest is entitled to a temporary and permanent injunction against Defendant, as well as all other remedies available under the Lanham Act, including but not limited to, transfer of

the Infringing Domain to Trivest or cancellation of the Infringing Domain, statutory damages up to $100,000.00, compensatory damages, treble damages, disgorgement of Defendant's profits, and costs and attorneys' fees.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, TRIVEST PARTNERS CORPORATION, prays for judgment against Defendant, TRIVEST FINANCE LLC, as follows:

A. Finding Defendant liable for infringement of the TRIVEST Mark and TRIVEST Design Mark and otherwise liable for the actions and claims described herein;

B. For temporary and permanent injunctive relief enjoining Defendant and its respective officers, employees, and agents, and all persons or entities in active concert or participation with Defendant, from:

  i. using the TRIVEST Mark and/or Infringing Designations, whether alone or in combination with other words or elements, or any other formative variations thereof or any mark confusingly similar to the TRIVEST Mark, in marketing, advertising, selling and/or providing any of Defendant's goods and services, including on buildings, signage, product labels, websites, source identifiers, on the internet, as or in domain names, email addresses, meta tags, keywords, search engines, Google AdWords, computer source coding, or invisible data;

  ii. using the TRIVEST Design Mark and/or the Infringing Design Designation, whether alone or in combination with other words or elements, or any other formative variations thereof or any mark confusingly similar to the TRIVEST Design Mark, in marketing, advertising, selling and/or providing any of Defendant's goods and services, including on buildings, signage, product labels,

    websites, source identifiers, on the internet, as or in domain names, email addresses, meta tags, keywords, search engines, Google AdWords, computer source coding, or invisible data;

  iii. falsely designating the origin of the TRIVEST Marks or otherwise creating a false association with Trivest;

  iv. injuring Trivest's goodwill and reputation; and

  v. doing any other act or thing that would likely induce the belief that Defendant's services are in anyway connected with or sponsored, affiliated, licensed or endorsed by Trivest or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendant with Trivest.

 C. Ordering that Defendant, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Trivest within thirty (30) days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the permanent injunction;

 D. Ordering Defendant to destroy all materials bearing the Infringing Designations, including stationary, letterhead, business forms, business cards, statements, invoices, signage, webpages, brochures, pamphlets, advertising and marketing materials or any other materials bearing the Infringing Designations in accordance with 15 U.S.C. § 1118;

 E. Ordering that the Infringing Domain be transferred to Trivest or, alternatively, that the Infringing Domain be cancelled pursuant to 15 U.S.C. § 1125(d);

 F. Enjoining Defendant from registering and/or purchasing any other domain name that contains "Trivest" or any other term that is confusingly similar to the TRIVEST Mark;

G. Ordering Defendant to account for all profits derived from Defendant's unlawful use of the Infringing Designations in accordance with 15 U.S.C. § 1117(a);

H. Ordering Defendant to pay Trivest monetary relief under 15 U.S.C. § 1117(a) in an amount equal to Defendant's profits plus damages sustained by Trivest as a result of Defendant's wrongful actions;

I. Ordering Defendant to pay Trivest three times Defendant's profits made as a result of Defendant's wrongful actions or three times Trivest's damages, whichever is greater;

J. Finding that this case is exceptional pursuant to 15 U.S.C. §§ 1117(a), 1117(b) and 1125(c), trebling any damages awarded to Trivest due to Defendant's willful and intentional acts of trademark infringement and/or false designation of origin and awarding exemplary damages for Defendant's willful and intentional acts;

K. Awarding Trivest statutory damages pursuant to 15 U.S.C. § 1117(d) up to $100,000.00;

L. Awarding Trivest its reasonable attorneys' fees and costs incurred in connection with this action;

M. For prejudgment interest according to law; and

N. For such other and further relief the Court deems just and proper.

## Jury Demand

Under Fed. R. Civ. P. 38(b), Trivest demands a trial by jury on all issues triable of right by a jury.

Dated: January 3, 2025            Respectfully submitted,

By: /s/ Joshua D. Martin
Joshua D. Martin
Florida Bar No. 028100
josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 W. Cypress Creek Rd., Suite 430
Fort Lauderdale, Florida  33309
Telephone:  (954) 790-6699
Facsimile:  (954) 206-0017

*Attorneys for Plaintiff, Trivest Partners Corporation*